UNITED STATES of America,
Plaintiff–Appellee,

v.

David HARPER Defendant–Appellant.

No. 00–2280.

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 2002.

Before JONES and COLE, Circuit Judges; and SARGUS, District Judge.*

PER CURIAM.

In December, 1997, David Harper pleaded guilty to possession of bank robbery proceeds in violation of 18 U.S.C. § 2113. He was subsequently sentenced to a term of 14 months imprisonment followed by a two-year term of supervised release. In August, 2000, the United States Probation Department petitioned the district court for a summons alleging various violations of the defendant's supervised release, including use of a controlled substance. The district court found Harper to be in violation of the terms of his supervision and sentenced him to a term of 24 months imprisonment. On appeal, Harper argues that the sentence imposed by the district court was improper under the Sentencing

---

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

Guidelines. We agree. Accordingly, we vacate his sentence and remand the case for resentencing.

## II. BACKGROUND

In August, 2000, the defendant's probation officer petitioned the district court for a warrant for his arrest. The petition charged the defendant with four violation of his term of supervised release, including (i) testing positive for cocaine; (ii) testing positive for codeine and morphine; (iii) engaging in felonious assault and destruction of property; and (iv) failing to pay restitution ordered as a result of his prior conviction. J.A. at 20. The district court held a violation hearing on October 18, 2000 in which the government agreed to pursue only the defendant's drug abuse. During the hearing, Harper persuaded the court that he had been sober for months, and that he would continue to be sober because he knew that his diabetes and other health problems would be exacerbated if he resumed his drug habit.

The Court: Okay. Mr. Harper, anything you would like to say?

The Defendant: The only thing I like to say is I'm trying, I'm trying hard, and if you test me today, I'm clean. I've been clean. And I only got a short period of time. I can guarantee you I'm not going to have any more drugs because my health is so bad that I'm not around any kind of influence, any time, and I won't be. I won't be dirty, ever, again.

J.A. 32–33. The court stated that "I was so sure this morning I was going to put you in prison for two years." J.A. at 35. But in light of the defendant's testimony concerning his failing health, the court adjourned the hearing for 60 days to allow the defendant an opportunity to obtain treatment for his diabetes and other ailments.

The record indicates that the district judge suddenly re-convened the hearing later in the afternoon that same day. It was apparent that the defendant had lied in his testimony that morning.

The Court: When we adjourned this morning, I adjourned it for sixty days. Mr. Harper indicated to me that he hasn't been using drugs although he's on some type of medication that pursuant to my standard procedure, he was going to give us a drug test today. . . .

. . .

The Court: Have you been using marijuana?

The Defendant: When I first got out of the hospital, a while back. I wasn't eating so I did.

The Court: You told me today that you could take a drug test—

The Defendant: I can, but I'm saying that was back when I got out of the hospital.

The Court When did you get out of the hospital? Last week, or two weeks ago.

The Defendant: Right, but I haven't used anything. I told you the truth.

The Court: You told me before you said you hadn't used anything for months.

The Defendant: The problem was, your Honor, it's not going to come back for marijuana. The problem was I wasn't eating. I couldn't eat—

The Court: But you used drugs. You can go to the doctor— I can get you over to the hospital, and if you're not eating, they'll give you an IV.

The Defendant: All I did was hit it one time, trying to get hungry.

The Court: As I say you lied to me. I've been conned.

J.A. at 46–48. The district court subsequently sentenced Harper to 24 months imprisonment and committed him to the custody of the Bureau of Prisons.

## III. ANALYSIS

The court reviews *de novo* the question of whether a sentence was imposed as a result of an incorrect application of the Sentencing Guidelines. *United States v. Thomas,* 24 F.3d 829, 832 (6th Cir.1994). On appeal, Harper argues that the sentence of 24 months imprisonment was contrary to the applicable range set forth in the Sentencing Guidelines. U.S.S.G. § 7B1.4 determines the applicable range of imprisonment the district court may impose as a result of a defendant's violation of the terms of supervised release. The term of imprisonment authorized under § 7B1.4 varies according to the seriousness of the violation and the defendant's criminal history.

Harper argues that the sentence of 24 months is based on the probation officer's incorrect determination that his drug abuse constituted a Grade A violation under § 7B1.4. The first thing to observe in this case is that there was some confusion below as to how to apply the guideline. This problem is compounded by the fact that the probation violation report has been omitted from the joint appendix the parties filed with this court. As a result, we have no immediate way of knowing how the probation officer decided that a Grade A violation was appropriate. Nevertheless, it does not appear that the 24 month sentence was appropriate.

For one thing, even if Harper's offense did constitute a Grade A violation, because his original criminal history was a Category V, a Grade A violation would have authorized a range of 30–37 months not 24 months. However, it is fairly clear that Harper's drug abuse did not constitute a Grade A violation under the guidelines. U.S.S.G. § 7B1.1 describes three grades of probation and supervised release violations:

> (1) Grade A Violations— conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a *controlled substance offense,* or (iii) involves possession of a firearm or destructive device ... (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;
>
> (2) Grade B Violations— conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;
>
> (3) Grade C Violations— conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.4 (emphasis added). From the above, it would seem that Harper's drug abuse would fall in the category of a Grade A violation because it involved a "controlled substance offense." This would not be a correct interpretation of the guideline, however, because U.S.S.G. § 4B1.2 defines "controlled substance offense" as an offense involving the actual distribution of a controlled substance or possession with intent to distribute an illegal drug.[1] It does not encompass the offense of simple possession.

---

1. "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with

We do not have the benefit of the probation officer's report and her analysis of why Harper's drug abuse was a Grade A violation. Nevertheless, the government concedes that his violation should have been considered a Grade C violation:

"In the violation petition, the probation officer addressed the sum of the allegations and concluded that together they constituted a Grade A violation. The defendant pleaded guilty only to one of the allegations, his unlawful use of controlled substances; simple possession of personal use quantities carrying less than a one-year term of imprisonment would in fact be a Grade C violation. The resulting recommendation under the policy statement would be 7–13 months, as the defendant asserts."

Appellee's Final Br. at 9–10. The government is correct. For a defendant with a criminal history of Category V, a Grade C violation authorizes a term of imprisonment of 7–13 months. U.S.S.G. § 7B1.4. The government argues that the sentence should nevertheless be upheld because

"[I]f the defendant feels that the court may have erred by failing to realize the recommended range was 7–13 months, defendant bears the blame. This issue could easily have been resolved on the spot—although defendant made an oblique reference to the lower range ... he nevertheless chose not to bring the alleged error to the court's attention at the hearing."

Appellee's Final Br. at 10.

This is double-speak. It would seem that the government is arguing that the defendant failed to raise the sentencing issue in the violation hearing and thus appellate review is precluded but for plain error. See United States v. Fountain, 2 F.3d 656, 669–70 (6th Cir.1993). However, the defendant explicitly objected to the probation officer's characterization at the hearing: "I disagree with the— and frankly, I meant to discuss this with Ms. Connor [the probation officer] before the hearing, I disagree that this is a Class— Grade A violation. Maybe I'm wrong, but I think it's a Grade C violation." J.A. at 32.

The question of the appropriate sentencing range was squarely before the district court. Contrary to the government's contention, the guidelines as well as the supporting policy statements are binding on the district courts. Stinson v. United States, 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that the "principle that the Guidelines Manual is binding on federal courts applies as well to policy statements"). The district court's failure to consider the guidelines resulted in the imposition of a sentence that was improper under § 7B1.4.

The government's final argument that the sentence should be upheld has no merit. The government cites the guidelines for the point that "at revocation the court should sanction primarily the defendant's breach of trust." U.S.S.G. § 7A3(b) Intro. (November 1, 2000). The government argues that Harper breached the court's trust when he lied to the court about how long he had been sober and, therefore, the greater sentence of 24 months was appropriate. It is clear from the guidelines, however, that the "breach of trust" refers to the defendant's failure to follow the court-imposed conditions of supervised release, not the defendant's failure to testify truthfully in the violation hearing. Therefore, this argument is not persuasive.

## IV. CONCLUSION

The applicable sentencing range under the guidelines was 7–13 months rather

---

intent to manufacture, import, export, dis-     tribute, or dispense." U.S.S.G. § 4B1.2.

than the 24 months the district court imposed. The district court failed to properly apply U.S.S.G. § 7B1.4. We, therefore, vacate the current sentence and remand this case for resentencing.